ERNEST A. ARNOLD, RESPONDENT, v. THE BROTHERHOOD OF LOCOMOTIVE FIREMEN & ENGINEMEN, APPELLANT.—106 S. W. (2d) 32.

Kansas City Court of Appeals. May 3, 1937.

*Lamkin James* for respondent.

*Harold C. Heiss, Edward E. Naber, S. M. Camean* and *Johnson & Bacon* for appellant.

BLAND, J.—This is a suit on an accident insurance policy issued by the defendant in favor of the plaintiff. There was a verdict and judgment for plaintiff in the sum of $2017.15, plus interest in the sum of $39.32. Defendant has appealed.

· The policy provided for a weekly indemnity of $20, for not to exceed 104 weeks, in the event that insured should sustain an acci-

dental visible injury, rendering him "unable to follow his usual vocation."

The facts show that plaintiff was engaged as a locomotive fireman for the Chicago & Alton Railroad Company. On February 28, 1934, while the policy was in full force and effect, a vision glass of the locomotive cab in which plaintiff was working, broke, resulting in a piece of the glass striking him in the left eye. On May 25, 1934, defendant mailed to the plaintiff its check in the sum of $62.85 in payment of disability covering a period of three weeks and one day, beginning with February 28, 1934; to and including March 21, of that year. On the back of the check appeared the following:

"Accident Claim No. 7060.

"This check received of the Brotherhood of Locomotive Firemen and Enginemen, $62.85.

"In full compromise, payment, satisfaction, discharge and release of any or all claims that I myself, my heirs, executors, administrators, assigns or beneficiaries now have or may hereafter have against said Brotherhood under Policy No. 7155 or for on account of injuries sustained by me on or about Feb. 28, 1934, and any loss that may hereafter result from said injury."

This check was indorsed and cashed by the plaintiff without protest.

This suit is to recover weekly indemnity for a period of 104 weeks at $20 per week, less the sum of $62.85 paid by the defendant to the plaintiff covering the period from February 28, 1934, to March 21, 1934.

Defendant insists that its instruction in the nature of a demurrer to the evidence, offered at the close of the entire testimony, should have been given for the reason that the release, appearing on the back of the check, fully released and discharged it from all liability under the policy.

This release was duly pleaded in the answer but plaintiff, in his reply, alleged, among other things, that it was without consideration. After a thorough examination of the evidence we are of the opinion that there was no consideration given for it.

The evidence shows that after plaintiff was injured he notified the secretary of the defendant local lodge at Slater thereof and that defendant mailed to him "some papers and I filled them out and I told them about the accident and everything." The papers that plaintiff filled out and returned to the defendant are not shown in the abstract and we do not know what they were. There does appear a document headed "Attending Surgeon's Statement," signed by Dr. Bellows, who it appears was a physician in the employ of the Chicago & Alton Railway Company. Dr. Bellows stated in this instrument that plaintiff was totally and continuously disabled from performing his usual duties from February 28, 1934, to April 16, 1934, and, in answer to

the question, "Has he (insured) fully recovered from his injury?" the doctor answered, "Wound healed—Vision poor." This statement of the doctor is dated April 16, 1934. The letter from the defendant to the plaintiff which accompanied the check, reads as follows:

"Enclosed herewith you will find check No. 879 in the amount of Sixty-two and 85/100 ($62.85) Dollars, which is final payment on your claim for weekly benefits from our Accident Indemnity Department. This covers a period of three weeks and one day or from February 28th the date of your injury, up to and including April 21st, the date of the wound to your eye healed, as per statement of Dr. Bellows.

"This is strictly in accordance with the provisions of Article 10, Section 19, of the Constitution.

"Yours fraternally,
"(Signed) A. Phillips."

As before stated, plaintiff cashed the check but he wrote defendant that it had made a mistake as to the time covered by the payment. In reply to this letter defendant, on May 31, 1934, wrote plaintiff, as follows:

"This is to acknowledge receipt of your letter of May 28th, wherein you claim a mistake was made in the length of time covered by check No. 879 in the amount of $62.85.

"Dr. Bellows' letter showed that the corneal injury was entirely healed on March 31st, therefore check covered a period of three weeks and one day or from February 28th, the date of your injury, up to and including March 21st, the date the wound to your eye healed. The writing on my letter of May 25th 'up to and including April 21st' was a stenographic error on the part of this office, and should have read March 21st. From this you will see check is correct.

"Trusting this explains our position, I am,
"Yours fraternally,
"(Signed) A. Phillips."

There is some discrepancy between the letters and the attending surgeon's statement, in reference to the date at which Dr. Bellows reported the wound to plaintiff's eye had healed. The attending surgeon's statement gives April 16th as the date, whereas, the letters indicate that the doctor had reported that the wound had healed on March 21st. It seems apparent that Dr. Bellows either made another report to defendant or defendant made an error as to the date upon which the wound had healed. However, no point is made in the briefs concerning this discrepancy and we are of the opinion that it is immaterial.

There was no consideration given by defendant to the plaintiff except the sum of $62.85, which covered no more than a period of three weeks and one day of disability. This period began on Feb-

ruary 28th and ended on March 21, 1934. Owing to the fact that, at that time, there was no disputed claim there could have been no compromise or settlement of such. Consequently, there was no consideration for the purported release of liability of the defendant to pay for disability after March 21, 1934. [12 C. J., pp. 342, 343; Dodt v. Ins. Co., 186 Mo. App. 168; Miners' & Farmers' Bank v. Am. Bonding Co., 186 S. W. 1139; Chapman v. Ry. Co., 146 Mo. 481; Yancey v. Central Mut. Ins. Ass'n, 77 S. W. (2d) 149.]

However, defendant contends that the plaintiff's reply, itself, admits that the defendant, at the time the check was sent to plaintiff, had denied all liability upon the policy and, therefore, there was a dispute to furnish a basis for a compromise. We think the defendant is in error as to its construction given plaintiff's pleadings.

The petition, itself, alleges that defendant voluntarily paid the sum of $62.85 covering a period from February 28th to March 21, 1934, but denied liability for any subsequent payments. The reply reiterates the allegation of the petition regarding this matter and alleges that defendant admitted liability for the period beginning February 28th and ending March 21, 1934, and paid plaintiff the sum of $62.85 on account of such admitted liability; that *after* the receipt of the check defendant requested plaintiff to be examined by doctors employed by defendant and required plaintiff to submit evidence to defendant of his disability; that defendant contended that plaintiff had not been injured or disabled so as to bring him under the terms and provisions of the policy.

A fair reading of the pleadings filed by the plaintiff discloses that he was alleging that there was no disagreement as to defendant's liability for the payment actually made by it but that defendant, after making this payment, denied further liability. There is nothing in the record to indicate that, at the time the check was paid by defendant, there had been any claim made by plaintiff for any further payments, or, that defendant was denying liability on account of any claimed further disability or, in fact, any period of disability. There was, therefore, nothing to compromise or settle. "Conflicting claims are essential to the validity of a compromise, one of its essential elements being the existence of a bona-fide dispute or a controversy between the parties. [12 C. J., p. 316.] In order for there to have been a consideration for the release contained on the back of the check it was necessary that there be a settlement of a bona-fide dispute or a doubtful claim. [12 C. J., p. 324.]

Of course, it was unnecessary for plaintiff to tender back the amount he received, in order to bring this suit, as the amount paid to him was upon an admitted liability. This suit does not cover the period for which disability was paid.

However, it is claimed that the demurrer to the evidence should have been sustained because there was no evidence that the injury to plaintiff's eye was such as to disqualify him from pursuing his usual vocation. This contention is based upon a misconception of the testimony of plaintiff's witness, Dr. Calloway. Dr. Calloway did not testify, as defendant contends, that plaintiff had 20-20 vision, which the doctor said was normal. The doctor testified that plaintiff had a scar over the whole pupil of his eye; that the scar "covered more than the dilated pupil;" that the scar "simply blurs the vision and makes the vision abated, crooked and not distinct. . . . His central vision is nil;" that the scar would have "practically the same effect . . . . as a window shade being pulled over the eye;" that the doctor had had experience in examining men qualifying for work as firemen and that the injury to plaintiff's eye would disqualify plaintiff from firing an engine on a railroad. Of course, the jury could have found from this testimony that plaintiff's sight was not normal. On cross examination, the doctor stated that if the scar had covered only one-fourth of the pupil it would lessen light perception one-fourth; that even a scar covering one-fourth of the pupil of an individual's eye might leave his vision 20-20; that if it even covered one-third of the pupil the vision still might be 20-20, which is a normal vision. In this case, plaintiff's scar not only covered a third or a fourth of the pupil but somewhat more than the entire pupil.

In defendant's reply brief it raises, for the first time, the point that, because plaintiff failed to comply with the laws of the defendant by appealing to its officers and board of directors prior to the bringing of this suit, as provided by the constitution of the defendant, this suit cannot be maintained. Defendant cannot raise such a point for the first time in its reply brief. [Ridenour v. Mines Co., 164 Mo. App. 576, 599; Erdmann v. United Rys., 173 Mo. App. 98; Austin v. Shoe Co., 176 Mo. App. 546; Norvell v. Cooper, 155 Mo. App. 445.]

Complaint is made of the giving of plaintiff's instruction No. 3, which, in part, reads as follows:

"If you further find that on the 28th day of February, 1934, the plaintiff, Ernest A. Arnold, sustained an accidental visible injury, which resulted in the impairment of vision in his left eye, if you find he did sustain such an injury, and if you find such injury, if any, resulted in the impairment of vision in his left eye, and that by reason thereof, if you so find, plaintiff was and is now unable to follow his usual vocation . . . then if you find all of the above to be true your verdict shall be for the plaintiff for the sum of $2,017.15, together with interest at the rate of 6% per annum from February 28, 1936, to this date."

It is claimed that the instruction fails to have the jury find that plaintiff was disabled from February 28, 1934, to February 28, 1936, or for a period of 104 weeks.

There is no merit in this contention. The instruction covers a period from February 28, 1934, to the date of the trial, which took place on the 24th and 25th days of June, 1936. There is no contention that, if plaintiff was disabled at all, he was not disabled for the entire time. There is no contention that the verdict is excessive.

However, it is claimed that "What period, or date, of time was meant by the word 'was' cannot be ascertained from the instruction." The word "was" plainly refers to the 28th day of February, 1934.

It is insisted that the instruction assumes that plaintiff was disabled without requiring the jury to so find. A mere reading of the instruction shows that there is no merit in this contention. There is no merit in the claim that the instruction is a peremptory direction to the jury to "find for the plaintiff in the sum of $2,017.15, without taking into consideration the period of time they might find plaintiff was prevented from following his usual vocation."

Complaint is made of the giving of plaintiff's instruction No. 4, which reads as follows:

"The court instructs the jury that if you find and believe from the evidence that the check mentioned in evidence was paid by the defendant to. the plaintiff merely as indemnity conceded to be owing by the defendant, if you find that indemnity of $62.85 for that period from February 28, 1934, to March 21, 1934, was conceded to be owing, and that said check contained no payment of additional moneys for a period subsequent to that period, then even though said check stated on the back that by endorsement thereof plaintiff released all future claims, the court instructs the jury that under the law there is no consideration for said release and you will not find against plaintiff by reason thereof."

It is contended (1) That the instruction directs a verdict for the plaintiff irrespective of the issues made by the pleadings and evidence: (2) That it does not mention the release pleaded and proved by the defendant: (3) It submits to the jury the construction of a written statement." A mere reading of the instruction discloses the lack of merit in these contention. Aside from this, as a matter of law, there was no valid release.

It is insisted that the court erred in permitting plaintiff, over the objection of the defendant, to introduce in evidence the following letter from plaintiff's employer: (The Chicago & Alton Railroad Company.)

"June 28th, 1935.
"File SPI-1290

"Mr. E. A. Arnold,
"Fireman,
"Slater, Missouri.
"Dear Sir:

"This is to advise that your name has been removed from the Firemen's seniority roster, and your record with the company closed, account of defective vision which renders you unfit under the rules of the company to perform the duties of a locomotive fireman, which condition was brought out in your recent suit against the Alton Railroad Company for alleged injury to your eyes while employed as a fireman on locomotive 2989, train 197, at Marshall, Mo., on February 28th, 1934.

"If you are in possession of any company property or transportation you will please turn this property in to Assistant Superintendent G. C. Brown, at Slater.

"Yours truly,
"(Signed) J. J. Butler,
"Superintendent."

When this letter was offered the following took place:

"MR. NABER: We object to this (letter), any action taken by the Alton Railroad Company would not be binding on this defendant. They are not parties to this suit.

"THE COURT: Under your statement, Mr. Naber, that the plaintiff did not offer himself to the railroad company after the injury and that is the reason why he is not now employed, it will be admitted on that theory.

"To which action of the court the defendant excepted, and still excepts.

"MR. NABER: We object also for the reason any statement with reference to plaintiff's eye made by the Alton Railroad Company would not be binding on the defendant.

"THE COURT: I agree to that.

"MR. JAMES: This letter is offered for the sole purpose of showing that the statement made by the attorney for the defendant in his opening statement to the jury that this man is at present able and willing to work for the railroad company and he was only discharged because of certain testimony, is not true.

"THE COURT: Objection overruled, let it go in. I think it admissible."

Defendant contends that the reason assigned by the court for permitting the latter to be introduced into evidence, to-wit: "That the defendant's attorney in his opening statement stated the plaintiff did not offer himself to the Railroad for work, does not authorize the admission of incompetent evidence. Defendant was not a party

to it and certainly cannot be bound by the Railroad Company's attitude."

. Defendant strenuously contended at the trial, and offered evidence in support of its contention, that the injury to plaintiff's eye was not sufficient to prevent him from following his usual vocation as a fireman. A fair construction of the record shows that the attorney for defendant, in his opening statement, told the jury that plaintiff was not so injured and that the reason he was not employed now was not because of the injury to his eye but because he had not offered himself to the railroad company for employment.

The matter of whether plaintiff had offered himself to the railroad company for employment was an issue foreign to the case. The policy did not provide that the railroad company should decide whether plaintiff was unable to follow his usual vocation as fireman. However, defendant voluntarily injected that issue into the case, if such can be done in an opening statement rather than by introducing evidence on the subject (and there is now no contention made that defendant could not inject the matter of plaintiff's offering himself to the railroad company for employment, by the route of an opening statement. However, on this question the curious may read Moore v. Dawson, 220 Mo. App. 791.) Defendant makes no such point in this court but contents itself by merely claiming that what it said in its opening statement did not go far enough to inject that issue into the case. We think defendant is in error in regard to this matter. If defendant had offered evidence at the trial to the effect that plaintiff did not offer himself to the railroad company for work and that such was the reason he was not employed, certainly it would have been competent for plaintiff to have shown that such was not the reason for his unemployment by showing the real reason. It will be noted that the only objection to the letter, in this instance, was that it was not binding upon the defendant. We think that the objection that the letter was not binding upon the defendant amounted to no objection whatever under the circumstances. Nothing is binding upon a party except his admissions. It is not necessary to make a document admissible in evidence that it constitute an admission of the adverse party. The objection was not sufficient. [Schmidt v. St. Louis Ry. Co., 163 Mo. 645, 651; Magill v. Boatmen's Bank, 250 S. W. 41; Ernst v. Union Dep. Bridge & Term. Co., 256 S. W. 222; 64 C. J., pp. 180, 187, 188.] The statement that the railroad company was a party to this suit threw no light upon the objection. In the case of Holeman v. Met. Life Ins. Co., 98 S. W. (2d) 343, 344, cited by the defendant, the court was not discussing the question of the necessity of informing the trial court of the real ground of an objection to evidence. In any event, the court did not use the identical language contained in the objection in the case at bar.

It is claimed that the court erred in excluding, on plaintiff's objection, certain exhibits offered by the defendant. These exhibits were notices and claims of disability that the plaintiff had made to the defendant for injuries received prior to the one in question. These notices and claims tend to show that plaintiff had previously received injuries affecting his eyesight. There was no contention at the trial that plaintiff's disability was caused by previous injuries but defendant, as before stated, was strenuously insisting at the trial that plaintiff's eyesight was good even after he received his present injury. The only purpose of the offering of these exhibits, discoverable from the record, is the statement by defendant's counsel, in connection with the offering of one of them, as follows: "I want to show. first, that this man is an abnormal malnigerer, what we might call an accident policy beater." The exhibits were not admissible for that purpose. There was no issue of fraud raised. [Dent v. Monarch Ins. Co., 98 S. W. (2d) 123.]

The judgment is affirmed. All concur.