Rachel V. D. Baker, Appellant, v. Sovereign Camp Woodmen of the World, Respondent.—116 S. W. (2d) 513.

Kansas City Court of Appeals.   May 2, 1938.

14

Elliott & Crouse and E. H. Gamble for appellant.

*Rainey T. Wells, Charles F. Keller* and *Harding, Murphy & Tucker* for respondent.

BLAND, J.—This is a suit on a life insurance policy. The case was tried before the court without the aid of a jury, resulting in a judgment in favor of defendant. Plaintiff has appealed.

The facts show that one W. C. Baker, husband of the plaintiff, desiring to become a member of the Local Lodge of the Woodmen of the World at Jerome, Arizona, on December 16th, 1896, made application to the defendant, a fraternal society organized under the laws of Nebraska, for a policy or certificate of life insurance; that on December 23rd, 1896, defendant issued a policy (described therein as a beneficiary certificate) to him in the sum of $2000 and $100 for the placing of a marker at insured's grave; that his brother, George Baker, was made the beneficiary therein. The policy provided that it was issued subject to all of the conditions on the back thereof and all of the conditions named in the Constitution and Laws of the Fraternity and was liable to forfeiture should insured not comply with

said conditions and constitution, laws and rules of defendant that were, at that time, in existence or might thereafter be adopted by it. On the back of the certificate insured expressly agreed to pay all assessments and dues that might be levied during the time that he might remain a member of the Woodmen of the World.

The constitution and by-laws of the defendant at that time provided that should the insured desire at any time to reduce the amount of his certificate he should surrender the certificate and a new one would be issued in a reduced amount. They also provided that insured could change his beneficiary at any time. This provision remained in defendant's by-laws continuously during the whole time that insured lived. The policy had printed upon it the words "Payments to cease after 30 years." This was placed upon the policy pursuant to section 82 of the by-laws then in force, as amended. On November 2nd, 1897, defendant became licensed in this State as a foreign fraternal beneficiary association and has continued as such. On March 23rd, 1899, section 82 of the by-laws was repealed by the omission of said section from them. Notice of this repeal was given the members by defendant's official publication. On December 12, 1901, insured had moved to Missouri and become a member of the Denver Camp. He applied to the defendant for a change in his beneficiary from his brother to his wife, plaintiff herein and, on the last mentioned date, the company issued a rider which was attached to the policy, showing the change in the beneficiary, as requested by insured.

On the 29th day of December, 1916, insured made application to defendant for a "duplicate" certificate, setting forth in the application that his certificate had been placed in a bank which had been robbed and burned and the policy was thereby lost or destroyed.

On January 9, 1917, defendant issued a new certificate in lieu of the original. Insured accepted, in writing, this certificate which will be hereinafter more fully described.

Pursuant to changes in the by-laws of the defendant, the assessment on insured's policy was increased in September, 1899, from 95 cents per month to $1.05 per month, and in September, 1901, from $1.05 per month to $1.40 per month, and in September, 1915, from $1.40 per month to $1.70 per month and in October, 1917, from $1.70 per month to $1.80 per month. Insured paid all of these amounts, plus the local camp dues, and paid said sum of $1.80 per month to the month of March, 1931, and from the month of March, 1931, to the month of October, 1931, both inclusive, he paid $3.75 per month. All in addition to the local camp dues. He paid no further assessments after this and died on August 31, 1932.

In January, 1919, defendant passed a by-law reciting that the contributions of its members had not been adequate to carry their in-

surance and adopted a so-called "Plan of apportionment and readjustment." Under this plan each member holding a "combined benefit certificate" was given an option to pay a higher monthly assessment or to continue paying $1.80 per month and suffer a lien on his certificate. Insured continued paying $1.80 per month and defendant charged his certificate with a lien of $340.00. On March 1, 1931, defendant had charged against the certificate said amount plus interest at the rate of 5 per cent per annum, amounting to $245.39, or a total of $585.39.

On March 30, 1931, insured applied for an exchange of the certificate then held by him for another called an "Equalized Certificate." In pursuance to this application defendant issued to him another certificate dated March 1, 1931, payable to the plaintiff, in the sum of $1415.00, being $2000.00 less said lien and accumulated compound interest thereon, or $585.00.

The new certificate provided for an assessment at the rate of $3.75 per month. As before stated, insured paid this amount, plus the local camp dues, from and including March, 1931, to and including October, 1931, when he ceased payments. By making no further payments (if he was legally liable to make them) he became, under the laws of the defendant, automatically suspended on December 31, 1931, and remained so until his death.

The certificate issued in March, 1931, acknowledged the amount and validity of the lien against the old certificate and insured cancelled and surrendered the latter on condition of the issuance of the new certificate, providing for reserve, cash value, loan value, paid-up and extended insurance.

On September 18, 1933, the Probate Court of Buchanan County, in which county insured died, ordered that no letters of administration be issued upon his estate and that plaintiff be authorized to collect, sue for and retain all of the benefits belonging to his estate, in the same manner and with the same effect as if she had been appointed and qualified as executrix thereof.

The suit is in two counts. The first count is to recover the sum of $2000 on the policy issued by defendant on December 23, 1896, with interest from September 5, 1932. The second count is to recover the amount of the premiums paid by insured to defendant after December 23, 1926, with interest to October 23, 1931.

The answer pleaded that the contract consisted of the policy, the application therefor and the by-laws of the defendant in force on December 23, 1896, and thereafter adopted; that the provision of the policy that it should become paid up after 30 years was null and void for two reasons: (1) Because section 82 of the by-laws, under which the 30 year clause was inserted, was repealed in 1899 and thereby the clause was wiped out: (2) Because, under Art. III

of defendant's corporate charter and under chapter 16, sections 195-206 inclusive of the Nebraska Statutes of 1899, defendant had no power to enter into the 30 year paid-up provision of insured's policy, nor to enact section 82 of its by-laws, and that such provision and by-laws were *ultra vires* and void; that the question whether said policy provision and by-law is void was resolved adversely to plaintiff by the Nebraska Supreme Court in Haner v. W. O. W. (Nebr.), 168 N. W. 189, and Trapp v. W. O. W. (Nebr.), 168 N. W. 191, by which decisions the courts of Missouri are bound under the full faith and credit clause of the Federal Constitution.

The answer then sets up the amounts of the premiums assessed and the amount paid by insured; that in 1919 defendant's rates were readjusted so as to require insured to either pay $6.39 per month or subject his insurance to a lien; that insured elected to submit to the lien and continued to pay the old rate, and that the validity of the readjustment has been adjudicated by the Nebraska Court in Fowler v. W. O. W., 183 N. W. 550, by which decision the courts of Missouri are bound; that on March 1, 1931, insured surrendered his certificate in exchange for a new one in the sum of $1415 ($585 less than the amount of the surrendered policy, the difference being on account of the lien with interest); that the new policy called for an assessment of $3.75 per month, which insured paid until October, 1931, but not thereafter; that plaintiff is not entitled to recover under the old certificate because it was surrendered and exchanged and she is not entitled to recover under the new certificate because of default in the payment of the assessments thereon and the forfeiture of the policy prior to the death of the insured.

The reply pleads that insured paid all dues, premiums and assessments on the first policy which defendant has retained, and is thereby estopped from asserting the defense of *ultra vires* in issuing the policy with the 30 year "payments to cease" clause; that the policy became paid up on December 23, 1936, and there was no consideration for its exchange for the one issued to insured in 1931.

Plaintiff insists that the court erred in rendering judgment for the defendant and urges that the judgment should have been in favor of plaintiff. The laws of Arizona were not pleaded and, consequently, the case must be decided as though the policies or certificates were issued in this State. [Lyons v. Met. St. Ry. Co., 253 Mo. 143.] This is conceded by the parties hereto.

In its brief defendant makes much of the circumstance of the issuance of the "duplicate" policy or certificate in January, 1917. Defendant introduced the application for the duplicate policy and the policy, itself, in evidence. The application describes the lost or destroyed policy as having been payable to Rachel V. D. Baker; that it was issued to insured as a member of the Denver Camp No. 200

located at Denver, Missouri, and made payable to his wife, Rachel V. D. Baker, and asked for the issuance to insured "of a duplicate certificate of membership."

An examination of the certificate issued in January, 1917, shows that, instead of issuing a *duplicate* certificate, defendant issued to insured one, dated January 9, 1917, in the sum of $2000, payable $1000 if the death of insured occurred during the first year; $1500 if during the second year and $2000 if after the second year. It also contained a provision that should insured become disabled by reason of old age, after reaching the age of 70, he should be entitled to certain disability benefits. At the end of the policy appears the words: "Issued in lieu of and carrying all rights under certificate dated December 23, 1896." The certificate also bears the notation at the bottom, signed by the insured, that he had read and accepted the same. The old certificate was not a "combined benefit certificate" and did not come within the 1919 "Plan of Readjustment" requiring insured to pay a greater assessment than $1.80 per month, [See Neff v. Sovereign Camp W. O. W., 48 S. W. (2d) 564, 571], while the new certificate was such a one. There are some other differences between the original and the so-called duplicate certificate, which are not necessary to point out.

Defendant's answer sets forth the issuance of the new certificate in January, 1917, and describes it as a "duplicate" certificate. No substantial right or defense is based, in the answer, upon this exchange of certificates. The part of the answer alluding to this circumstance appears to be more of a historical recitation and an assertion of alleged defenses which existed under the first certificate as then in force. The real defenses set up in the answer are as outlined by us in our statement of the facts. As evidence that no material consequence was attributed to the exchange of these certificates in 1917, the answer, near its conclusion, states that the insured "cancelled and surrendered *said benefit certificate No. 729 Arizona* and accepted from said defendant an *equalized certificate in the amount of One Thousand Four Hundred Fifteen Dollars* ($1,415) . . . and continued to make payments thereon from the month of March, 1931, to and including the month of October, 1931, at which time he made default in any further payments thereon." (Italics ours.)

In its brief defendant urges that the certificate issued in 1917 is different from the original certificate; that when it was issued defendant was authorized to do business in this State as a fraternal insurance association; that the new certificate constituted the entire contract between the parties; that it was issued, as it states on its face, under and by virtue of the provisions of the laws of defendant; that it constituted a "combined benefit certificate;" that the benefit certificate was one which, in addition to the benefits to be paid on the death of insured, provided old age and disability benefits.

Why defendant did not plead, in its answer, the new certificate issued in 1917, as a substantial part of its defense, is not explained in its brief. We can only speculate as to that omission, which was probably due to the fact that the new certificate provided that it should carry *"all rights"* under the old. However that may be, the issues to be determined by the trial court and this court are those made by the pleadings and no such defense as is now suggested was alleged in the answer. On the contrary, it alleges that the new certificate was a duplicate of the old. If that part of the answer in which this statement occurs is to be treated as containing material statements, the allegation that the policy was a duplicate will be considered as conclusively binding upon the defendant. [49 C. J., pp. 122, 123, 124, 287; Boyajian Bros. v. Reinheimer, 250 S. W. 364.] The word "duplicate" is defined as "That which exactly resembles or corresponds to something else; another, correspondent to the first; hence, a copy; transcript; counterpart; as a *duplicate* of a dispatch; specif. *Law*, an original instrument repeated; a document the same as another in essential particulars; differing from a copy as being valid as an original." [Webster's New International Dictionary.]

We think that the defenses sought to be pleaded to the action are without merit. Even if the defendant were to be considered as a fraternal beneficiary association in the issuance of the policy in 1896, it could not, by thereafter changing its by-laws, deprive insured of any substantial rights conferred by the policy or certificate theretofore issued to him, although the policy and the application provided that insured was to be bound by the by-laws then in force or thereafter adopted. Consequently, it could not, by repealing in 1899 section 82 of its by-laws, void the provision of the policy or certificates that payments should cease after 30 years. [Mathews v. Modern Woodmen, 236 Mo. 326; Dessauer v. Macabees, 278 Mo. 57, 73; Neff v. Sovereign Camp W. O. W., *supra*; Dawson v. Knights of Macabees, W. O. W., 57 S. W. (2d) 748; Traughber v. Knights of Maccabees W. O. W., 57 S. W. (2d) 783; Crnic v. Croation Frat. Union of Am., 89 S. W. (2d) 683; Bolin v. Sovereign Camp W. O. W., 112 S. W. (2d) 582; Reece v. The Security Benefit Association, 114 S. W. (2d) 207.]

However, the repeal of section 82 consisted of nothing more than striking out that section in the by-laws. It did not enact anything in lieu thereof or in any way refer to policies or certificates then in existence and did not purport to affect such policies or certificates. Consequently, the repeal was prospective only in its operation. [Stevens v. Noschang Co., 199 S. W. 706; 45 C. J., pp. 35, 44; Bolin v. Sovereign Camp W. O. W., *supra*.] Had it been retrospective it would have been void, as above indicated.

From what we have said the 30 year payments to cease clause was

binding upon the defendant in 1926 at the time the 30 years expired. Consequently, insured's policy in the sum of $2000, on that date, became fully paid and the issuance of a new certificate in 1931 in the sum of $1415 was without consideration. At the time it was issued insured had a fully paid policy in the sum of $2000. The new policy not only reduced his insurance to $1415 but it required him to continue paying assessments. Insured received no benefit from the new policy and defendant suffered no detriment from its issuance. Therefore, it was without consideration. [13 C. J., p. 331; 32 C. J., pp. 1142, 1143; Bowman v. Jones Bldg. Co., 58 S. W. (2d) 718; Traughber v. Knights of Macabees W. O. W., *supra*; Yancy v. Central Mutual Ins. Co., 77 S. W. (2d) 149; Arnold v. Brotherhood of Loc. Firemen & Engineers, 106 S. W. (2d) 32; Rice v. Providence Life & Acc. Ins. Co., 102 S. W. (2d) 147.] This case is entirely unlike that of Barthel v. Sovereign Camp W. O. W., 93 S. W. (2d) 285. Aside from this the old policy could not be cancelled without the consent of the beneficiary and she did not consent to it. [32 C. J., pp. 1257, 1258, 1264; 37 C. J., pp. 439, 440.]

However, defendant claims that the issuance of the policy, with the "payments to cease" clause upon it, was *ultra vires* and void on account of the fact that there was no provision in its charter permitting its issuance, and that, although this contract is to be treated as having been made in Missouri, the law of Nebraska, as construed in the Haner and Trapp cases, is to govern in this matter.

We have recently had up this same question in two cases. Bolin v. Sovereign Camp W. O. W., and Reece v. The Security Benefit Association, in which we decided contrary to the contention now made by the defendant. We held in those cases that the Missouri law, as interpreted by Missouri courts, governs. [See, also, Neff v. Sovereign Camp W. O. W., *supra*; Marshall v. Knights of the Macabees of the World, 270 S. W. 418; Cass County v. Merc. Town Mut. Ins. Co., 188 Mo. 16.] It would serve no useful purpose to again go into the matter.

However, it is contended that, under the full faith and credit provision of the Federal Constitution, we are compelled to follow the Supreme Court of Nebraska in the Haner and Trapp cases, declaring such clauses as the one in question, because not authorized by the charter of the defendant, *ultra vires*.

We likewise considered this same question in the Bolin and Reece cases; also in Neff v. Sovereign Camp W. O. W., *supra*, and held adversely to the contention of the defendant. We said in the Bolin case, l. c. 591, 592: "The Trapp case is not on all fours with this case. That case did not involve any question as to the *status* of the defendant therein being that of a regular or old line insurance company rather than of a fraternal society on coming into the State and

issuing the certificate in question without any law authorizing it to do so as a fraternal society. The certificate in that case was treated as the contract of a fraternal society duly authorized to do business as such in the State of Nebraska, where it was issued. The question of the *ultra vires* character of the certificate was not discussed, considered, or determined from any standpoint other than that it was the contract of a fraternal society duly authorized to do business as such, which was not in violation of the charter powers of the defendant as such. That it was *ultra vires* the powers of the defendant society considered as an old line or regular insurance company, operating under circumstances subjecting its contracts to the general insurance laws rather than the laws relating to fraternal societies, was not involved or determined.

"Many of the propositions omitted from the Trapp case are involved in this case. It is determined in this case that the defendant society, at the time that the certificate in question was issued, was not operating in this State as a fraternal society but was operating under the general laws of this State. The two cases are not therefore alike. Furthermore, the question of estoppel involved in this case was not involved in the Trapp case. The Supreme Court of this State has so held in this instant case, and it so appears from the record."

So, in the case at bar, the certificate is old line life insurance as it was issued during the hiatus existing in the Missouri Fraternal Insurance Law between 1889-1897, when there was not in force in this State any law relating to foreign fraternal societies. In addition to this, even had defendant been licensed in this State as a fraternal society, at the time the policy was issued, nevertheless, the policy would be construed to be old line for the reason that fraternal insurance societies in this State have no power to issue "30 year" payment policies. It is not the character of the insurer but the character of the insurance, that determines what defenses can be successfully made as against the claims of the beneficiary. [Tommey v. Supreme Lodge Knights of Pythias, 147 Mo. 129; Schmidt v. United Order of Foresters, 228 Mo. 675; Knott v. Security, etc., 161 Mo. App. 579; Reese v. Benefit Asso., *supra*.]

We have examined the opinion in the case of Robertson v. The Security Benefit Association, recently decided by the Supreme Court, but deem it not in point. In that case no consideration was given to the point that the company was not authorized to do business in this State as a fraternal beneficiary association at the time the policy was written, but the court said: "When a corporation organized by one State is *authorized by the laws of another State to do business in the latter,* it carries with it its charter and law under which it is incorporated."' (Italics ours.)

The act approved on March 30, 1911, governing fraternal beneficiary associations (see laws 1911, pp. 284, 291) did not change the character of the insurance in this case. Section 17 of the act, providing for the admission of foreign fraternal societies and containing a proviso stating "that nothing contained in this or the preceding section shall be taken or construed as preventing any such society from continuing in good faith all contracts made in this State during the time such society was legally authorized to transact business herein," cannot be construed as making policies issued by foreign fraternals, not then licensed to do business in this State, fraternal insurance policies. Such construction would make the proviso unconstitutional and void, as impairing the obligations of contracts (Schmidt v. United Order, etc., *supra*, l. c. 699, 700; Mathews v. Modern Woodmen, *supra*), and will not be made unless there is clearly no ambiguity and the language used compels such an interpretation. The proviso was evidently enacted merely to preserve the rights of the parties to policies that had been written in this State by foreign fraternal insurance societies so that they might be carried out and performed, as made, by the parties, and it was not the intention of the Legislature to change such policies in any manner, [McCoy v. Modern Woodmen of Am., 275 S. W. 552; 59 C. J., pp. 1159, 1169.]

There is no merit in the contention that the policy in suit became old line merely for the purpose and no other of applying the statute of this State, covering old line insurance policies, making suicide and false representations, under certain circumstances, not a defense. The policy could not be old line for one purpose and fraternal for another. In support of its contention defendant cites Westerman v. Supreme Lodge Knights of Pythias, 196 Mo. 670. While the decision in that case was concurred in by a majority of the court, the opinion was not. That case is not in point for the reason that, in the first place, the Supreme Court declared the policy there in controversy fraternal insurance and, consequently, the statutes governing old line insurance were not applicable. While the court held that the policy was fraternal and not old line, the decision has been construed as authority for the proposition that, even if a policy be issued under such circumstances as to constitute it old line insurance, the nonforfeiture provisions of our old line insurance statute providing for extended and paid-up insurance, is inapplicable, not because the policy is not old line but because, by its very nature, those provisions of the statute could not be applied. In speaking of the Westerman case, *supra*, the Supreme Court in Schmidt v. Foresters, *supra*, l. c. 708, 709, said: "Thus it further appears there was a real disposition of this case without a consideration of any exemption being allowed to fraternal beneficiary associations. This inherent non-

applicability of the non-forfeiture statute does not apply to the suicide statute.''

It appears that prior to the filing of the present suit plaintiff brought suit upon the policy issued by defendant in 1931; that about the time she filed this suit she dismissed that one and brought this. Counsel for plaintiff testified that he brought the former suit without having any knowledge of the issuance or the existence of the original policy in 1896; that he first discovered the existence of that policy when he took some depositions of defendant's officers and employees and, thereafter, he brought the present suit, dismissing the first one. The first suit pended thirteen months, and for a year after counsel learned of the old policy.

Defendant insists that, by bringing the first suit, plaintiff made an election of remedies and this suit cannot be maintained. There is no merit in this contention. The first case was dismissed before it came to trial. Of course, there was no judgment rendered or recovery of any kind made by plaintiff by reason of that suit. [Johnson-Brinkman Co. v. Central Bank, 116 Mo. 558; Johnson-Brinkman Co. v. The Mo. Pac. R. Co., 126 Mo. 344; Otto v. Young, 227 Mo. 193; Dry Goods Co. v. Warden, 151 Mo. 578.]

The defendant has filed a motion to dismiss the appeal on the ground that there was no proper ''Assignment of Errors'' in plaintiff's motion for a new trial and that the ''Assignment of Errors'' made in plaintiff's brief is insufficient. The ''Assignment of Errors'' made in the motion for a new trial is as follows: ''1. The judgment is for the wrong party. 2. The judgment is against the law. 3. The judgment is against the evidence. 4. The judgment is against the law under the evidence. 5. The court erred in refusing to find the issues for plaintiff and in finding the issues for defendant.'' There is but one contention made in this court, that is, that the judgment was for the wrong party. The ''Assignment of Errors'' in the motion for a new trial was sufficient to preserve this point. [Municipal Sec. Corp. v. K. C., 265 Mo. 252; Wampler v. R. Co., 269 Mo. 464; State ex rel. v. Reynolds, 213 S. W. 782; Chawkley v. Wab. Ry. Co., 297 S. W. 20.]

In plaintiff's brief the following appears under the heading ''Assignment of Errors;'' ''(1) The trial court erred in rendering judgment for defendant. (2) The trial court erred in not rendering judgment for plaintiff on the first count of her petition. (3) The trial court erred in not rendering judgment for plaintiff on the second count of her petition.'' Then follows plaintiff's ''Points and Authorities'' consisting of fourteen separate sub-heads under which plaintiff fully and clearly discloses the reasons why the judgment was for the wrong party. We think that the ''Assignment of Errors,'' taken together with the ''Points and Authorities,'' constitute a suffi-

cient compliance with our rule in such matters, there being but one contention advanced by the plaintiff in this court and that is, that the judgment was for the wrong party. [Kirkland v. Bixby, 222 S. W. 462; Amick v. Empire Trust Co., 296 S. W. 798; Streicher v. Merc. Trust Co., 31 S. W. (2d) 1065; Church v. Combs, 58 S. W. (2d) 467; Bury v. St. Louis-San Francisco Ry. Co., 17 S. W. (2d) 549; Round Prairie Bank v. Downey, 64 S. W. (2d) 701.]

The motion to dismiss the appeal is overruled and the judgment is reversed and the cause remanded with directions to the trial court to enter judgment on the first count of the petition for the full amount of the policy, to-wit: $2000, with interest as prayed and on the second count as prayed. *Reynolds, J.,* concurs; *Shain, P. J.,* dissents in separate opinion.

### DISSENTING OPINION.

,SHAIN, P. J.—I canont concur in the majority opinion herein for the reason of the fact that the opinion eliminates from consideration the charter and laws of the fraternal society of which the plaintiff is a member, and wherein said plaintiff has agreed to abide by the laws of the society.

The writer holds that when parties enter into mutual agreement and adopt a constitution and provide a republican form of government and agree that their mutual contracts shall embrace and be governed according to the adopted laws of the society, that any construction of the contract of any member that leaves out consideration of said laws is erroneous, unless by reason of the law of this State the provisions of the contract cannot be enforced.

The only grounds upon which such contracts as are herein in issue cannot be enforced, we conclude, is the law as declared by the Supreme Court of Missouri, to the effect that a foreign society's contract, in the absence of authority to do business in this State, must be treated as an old line insurance contract, and the laws of this State as to old line insurance contracts applied to said contracts.

In the case of Bolin v. Sovereign Camp of the Woodmen of the World, 112 S. W. (2d) 582, certified to this court by mandate of Supreme Court, 339 Mo. 618, and wherein the Sovereign Camp was the appellant, the judgment of the circuit court was affirmed. I concurred in said opinion for the reason that by the mandate of the Supreme Court the good faith and credit clause was declared not to be involved in the case. This, of course, eliminated from our consideration the charter and laws of the society, and left us no other alternative than to determine the issue based upon our law governing old line insurance, for the reason that there was neither allegation or proof of the fact, if so, that said society, a foreign society, was

chartered to do business in this State, either at the date of the contract or the date of maturity, as specified in the contract.

The writer dissented in Reese v. Security Benefit Association, now pending on *certiorari* in the Supreme Court of Missouri, for the reason that it was shown in said case that the society was duly authorized to do business in this State at the alleged maturity date, and at the time suit was brought. It is our contention that a foreign mutual society, when it is chartered to do business in the State of Missouri, carries with it its charter and laws and, by the act of application and admission to do business in this State, all provisions in mutual contracts between its members, that are prohibited by the charter and laws as interpreted by the State, of the incorporation, and all provisions prohibited by the laws of this State governing fraternal societies are abrogated, and the coverage clause of each mutual contract, that is in existence at the time, must have read into same the provisions of the charter and laws as interpreted by the courts of the State of Missouri touching such contracts as are thereafter issued to members who join after the society is authorized to do business in this State, unless the society makes provisions to continue its old contracts on terms that maintain the mutuality as between all of its members. Otherwise great injustice is done which violates the fundamental principles of the law governing mutual contracts. We find nothing in the record before us in this case that shows that any such provision, as above, has been made.

We have before us a copy of the opinion of the Supreme Court of Missouri in Robertson v. The Security Association, not yet published. The Bolin, Reece and Robertson cases, *supra*, have this in common: In each of said cases it is shown that the original contracts of insurance were made in this State before the societies were authorized to do business in this State, and each of said societies is shown as incorporated in a foreign State. In the Bolin case, as before stated, there was not alleged or shown that the society was authorized to do business in this State at time of accrual of claim, or at time suit was filed. The Reece and Robertson cases are distinguished from the Bolin case in that the societies are shown as authorized to do business in this State at the time of accrual and suit.

Since the Robertson case was handed down by the Supreme Court, the opposing attorneys in the case at bar have called same to our attention with opposing interpretations.

The appellant herein is contending that the opinion in the Robertson case ignores the fact that the association was not licensed to do business in this State at the time the certificate was issued and, therefore, not controlling in the case at bar.

Respondent in this case contends that the language of the opinion in aforesaid case is to the effect, that when the foreign society is char-

tered to do business in this State then all of its contracts, whether issued before or after, are to be interpreted with the provisions of its charter and laws under which it is chartered.

The contention of the writer is that, insofar as the case at bar is concerned, the judgment should be affirmed regardless of whether or not the law of the State where incorporated be applied. Our reason for so holding is that the defendant society at the time of the accrual, and time of suit, was chartered to do business in Missouri, and that under the laws of Missouri the provisions of the contract under which the plaintiff seeks to recover is prohibited by the laws of Missouri, and that under the laws of Missouri governing mutual association contracts of insurance the plaintiff is barred from recovery.

Considering as I do that the opinion herein is in conflict with Gooch v. Metropolitan Life, 61 S. W. (2d) 704, l. c. 707, and Garretson v. Woodmen of the World, 210 Mo. App. (Springfield Court of Appeals) 539, and concluding further that the opinion is out of harmony with Robertson v. The Security Benefit Association, *supra,* I ask that this case be certified to the Supreme Court of Missouri.