WILLIE NEFF, RESPONDENT, v. SOVEREIGN CAMP WOODMEN OF THE WORLD, APPELLANT.—48 S. W. (2d) 564.

Kansas City Court of Appeals. December 7, 1931.

*L. B. Gillihan* and *Miles Elliott* for respondent.

*De E. Bradshaw* and *Chas. F. Keller* for appellant.

TRIMBLE, P. J.—Suit on a Beneficiary Certificate, originally issued by defendant January 23, 1894, on the life of Von Roy Neff, at Cameron, Missouri, wherein was provided insurance for $2000 and $100 in addition thereto for a monument. As originally issued, the Certificate named the parents of said Neff as beneficiaries, but on September 12, 1894, insured having requested that his wife be substituted as beneficiary, a Certificate of that date was issued in lieu of the former Certificate, naming her (the plaintiff herein) as such beneficiary. Insured died at Cameron, Missouri, November 9, 1927. The only defense relied upon to escape payment of the Certificate is, that at the time of his death, deceased was not a member of the Society, having become suspended March 1, 1924, for nonpayment of the February, 1924, installment of the annual assessment on said Certificate. (As a matter of fact said installment was not paid, nor were any installments paid thereafter.) Defendant's contention is that said Certificate became null and void on said March 1, 1924. It is also contended that, in the event the court should hold the Certificate was in force at the date of the insured's death, then certain sums should be deducted from the amount due on the Certificate. The trial court held against both of these contentions and rendered judgment for the full amounts specified in the Certificate. Thereupon defendant appealed.

In considering the appeal, we are confronted at the outset with Respondent's Motion to Dismiss (accompanied by suggestions in support thereof), based on alleged failure to comply with Section 1060, Revised Statutes 1929, and Rules 15 and 16 of this court, relating to the form, preparation and contents of appellant's brief. It is charged in the motion that appellant's brief does not contain a clear and concise statement of the case, and does not set out in "numerical order" the points or legal propositions relied on, with citations of authorities in support thereof; that the brief does not separate the points or legal propositions, with the authorities cited under each, but that, if there are any, they are hopelessly commingled, and are at best mere abstract statements of law; and that it is impossible for respondent or the court to ascertain, from the brief what points appellant relies on. With reference to this last, it appears from the very clear and concise brief filed by respondent that no difficulty has been encountered by respondent's counsel in ascertaining the points appellant relies on, though this, perhaps, may come from knowledge acquired in the trial of the case and not from appellant's brief.

It will be seen that there is only one main or vital point in this case, with a minor point as to the amount properly recoverable if the court decides the main point adversely to defendant. This, then, presents a situation different from the cited cases wherein numerous errors were complained of and the appellate courts dismissed the appeals because of the appellants' failure to file sufficient briefs. They either contained no statement at all, or, if they did, such statement was not separate from the rest of the matter, nor clear enough to give a compact yet comprehensive view of the case; or the assignments of error were too general or so abstract in their nature as to give the court no accurate idea of the errors complained of or of the points involved in the appeal.

In the case at bar, the assignments of error are general in form, but assignments Nos. 1, 2, and 4 do raise, in different ways, the point that, on the record, plaintiff cannot recover, and this is the main point we are called upon to decide. And assignment No. 5 raises the point that the court erred in rendering judgment in excess of the amount recoverable, if the Certificate is held to have been in force at the time of insured's death.

As to the charge that appellant's brief does not state the points "in numerical order" with citation of authorities under each, it is true the points and legal propositions are not *numbered* in the brief, but they are separately stated and the authorities are cited separately under each. The points might have been better or more clearly stated, but we can easily see what appellant is "driving at" and hence we cannot in good conscience deny appellant's right to be heard on appeal. Although the brief is, perhaps, inartificially drawn, yet the statement of the case and the brief are sufficient to advise the court and adverse counsel of the nature of the case and the errors complained of. This makes the statement and brief sufficient. [Houck v. Bridwell, 28 Mo. App. 644.] The brief in this case is clearly no worse, if no better, than the brief in Summers v. Cordell, 187 S. W. 5, in which it is said that appellant's brief did "not come up to the requirements of" the rule, but nevertheless the Supreme Court did not dismiss the appeal but went ahead to consider and decide it. Respondent's motion to dismiss is therefore overruled. This is not to be understood as a commendation of the appellant's brief as to either its contents or form of statement, but merely as a declaration that, in view of there being only two points involved, and the brief can be easily understood as to them, it will be allowed to pass muster.

Was the policy in force at the time of insured's death? Insured was slightly over twenty years of age at the time he applied for and received the original Certificate, namely, January 23, 1894. Prior thereto, and in January, 1893, defendant's Sovereign Executive

Council adopted a resolution which was, in the year 1895, ratified and adopted by defendant's Sovereign Camp, the supreme governing and legislative body of defendant, at its regular biennial session, as an amendment to its Constitution Laws and By-Laws to be known as Section 82, which reads as follows:

"Section 82. Life Membership Certificates shall be issued by the Sovereign Camp to all members of the Woodmen of the World, under the following conditions:

"When the certificate of a member who has entered the Order between the ages of sixteen and thirty-three has been in force and binding for thirty years, . . .; and that after the said Life Membership Certificate has been issued, *the Life Member shall not be liable for Camp dues, assessments or General Fund dues.* That the proper officers of the Sovereign Camp shall issue quarterly, assessment calls upon all members of the Woodmen of the World, regardless of jurisdiction, or nation, for a sufficient amount to pay all death claims accruing during the previous three months, for said life members, who have died during the said time, under this provision and that any Life Member visiting a Camp shall be greeted with the honors of the Order and shall be seated at the right of the Consul Commander, and shall also be entitled to wear a Life Membership badge, to be designed and prescribed by the Sovereign Camp." [Italics ours.]

Pursuant to the above provisions, both the original and substitute certificates were issued to insured (in Missouri) bearing this notation or endorsement thereon: "Payments to cease after thirty years."

Upon receipt of the certificate in January, 1894, insured regularly paid, as they became due, all camp dues, assessments and general fund dues up to and including those for January, 1924, a period of more than thirty years; and, being a member who had entered the order between the ages of sixteen and thirty-three years and whose certificate had been in force and binding for thirty years, he made no further payments, not being liable therefor according to the terms of the certificate and of said section 82 of the Constitution and By-Laws. As stated, he died November 9, 1927. No questions are raised as to notice of death or any other preliminaries required of the beneficiary in the presentation of her claim. The only defense is that upon failure of the insured to pay the assessment of February, 1924, insured became automatically suspended March 1, 1924, and hence, it is claimed, the certificate became null and void and was not in force when insured died.

This defense is bottomed upon the following: That defendant is a fraternal beneficiary society or association incorporated under the laws of the State of Nebraska, with a lodge system, ritualistic form of work and a representative form of government, having no capital

stock, and conducting. its business without profit and for the sole benefit of its members and their beneficiaries; that its supreme law-making body is the Sovereign Camp composed of its officers and delegates elected from the various States in which the association does business; that said Sovereign Camp meets, and has heretofore met, biennially in the odd numbered years, and at each session it enacts, adopts, amends and passes laws and by-laws for the government and control of its business and the relationship of its members, all of which are known as the Constitution, laws and by-laws of said association; that it has done this at every biennial session of the Sovereign Camp from the year 1893 to the present time.

That defendant is only an impartial channel through which the members carry on their business with each other; that in the collection of funds from the members and in the paying out of sums due to beneficiaries defendant acts as the agent of both parties and holds all funds coming into its possession in trust for the use and benefit of its members and the beneficiaries under the contracts issued; that each member contracts and agrees to pay the assessments at the rate required and to be bound by the rules and regulations which are or may be adopted by the supreme camp.

That insured, in his application, agreed to be bound by defendant's laws and to comply with all its requirements; that insured accepted the certificate in which it was provided that the same was issued and accepted subject to all the conditions on the back thereof and named in the Constitution, laws, and by-laws, and liable to forfeiture if the insured did not comply with the conditions, Constitution, fundamental laws and such by-laws and rules as are or may be adopted by the Sovereign Camp; that the conditions on the back of said certificate were that the same was issued in consideration of the agreements made by insured in his application, and also in consideration of his agreement to pay all assessments and dues that may be levied during the time that he shall remain a member; that if the same are not paid as required by the laws of the fraternity and if benefit fund assessments assessed against insured ''are not paid to the local clerk before the first day of the month following the levy of same, then this certificate shall become null and void and continue so until payment is made and the requirements of the Constitution, fundamental laws and by-laws of this fraternity have been complied with.''.

That at the biennial session of 1897 the Sovereign Camp enacted a law known as section 68, reading as follows:

''Section 68. An Honorary Life Membership Certificate shall be issued by the Sovereign Camp to every member of the Sovereign Jurisdiction, Woodmen of the World, as a reward for his persistency,

as follows: To members joining the Order on or before he reaches thirty years of age at the expiration of thirty years from time of joining; . . .

"An honorary life member shall be entitled to a seat of honor in the Forest; shall be furnished by the camp of which he is a member with a distinctive badge to be designed by the Sovereign Commander, and he shall, upon visiting other camps, receive the camp honors. His name shall be enrolled and published in the Sovereign Camp reports."

(It is said in defendant's answer that the above is an amendment to section 82 hereinbefore quoted, and, *in effect,* it may be an amendment of section 82 although in itself nothing is said about section 82 nor is it anywhere shown in the record what became of said section.) If section 68 is an amendment of section 82, then it will be observed that the by-law eliminated the clause which provided that such "Member shall not be liable for Camp dues, Assessments or General Fund dues," and provided merely that such member should only be entitled to a "seat of honor in the Forest" (whatever that may mean), and should be furnished with a "distinctive badge" and "upon visiting other Camps, receive the Camp Honors," and have his name "enrolled and published in the Sovereign Camp reports."

Defendant also set up in its answer that the Sovereign Camp, as its session held in 1899, repealed the "so-called Life Membership provisions entirely" and the Sovereign Camp clerk testified in a deposition that they were repealed, though the abstract discloses no record of defendant to that effect.

Defendant further set up that the case is controlled by the decision rendered by the Supreme Court of Nebraska in the case of Trapp v. Sovereign Camp of the Woodmen of the World, decided June 15, 1918, reported in 168 N. W. 191, and set out the opinion. Without quoting said opinion in full, we may say that the action was one in equity to compel defendant to issue a paid up policy to plaintiff (who being over forty-two years of age and having been a member for twenty years, should, according to the by-laws, not "be required to pay any assessments or dues" but should "receive a paid up certificate, payable at death to his designated beneficiary)." The opinion says that it was set up in defendant's answer that defendant was organized under the State of Nebraska and that under its articles of incorporation it was authorized to create a fund from which there should be paid upon the death of a member the proceeds of one assessment upon the surviving members not exceeding the amount designated in his beneficiary certificate; that the defendant had the right to issue benefit certificates to its members,

the amount thereof to be paid upon the death of the member, but had no right or power to issue any other kind or class of certificates, and that the society never had the right, under the law, to issue a paid up certificate; and that the by-law relied upon is *ultra vires.* After stating defendant's contentions as above set out, the Supreme Court ruled that "the main questions presented have been determined adversely to plaintiff in the case of Hanor v. Grand Lodge, A. O. U. W., 168 N. W. 189 (No. 20280), decided June 15, 1918, and on the authority thereof the judgment of the district court is affirmed."

The defendant further set up that at each of the biennial sessions of the Sovereign Camp in 1895, 1899, 1901, 1915, 1917 and 1919, the Constitution, laws and by-laws were amended so as to raise the rates required above the rates that were in effect when insured's certificate was issued, and these increased rates (with one exception, to be hereinafter noted as not applicable to the certificate herein) were paid by insured, thereby recognizing and acquiescing in the power and authority of defendant to increase insured's rates.

The defendant then attempted to plead a certain suit brought in the State of Nebraska by certain members for themselves and all other persons similarly situated, attacking the increased rates as being too high, exorbitant and unreasonable and as being void because they constituted a breach of contract; that said suit was entitled Charley Fowler et al. v. The Sovereign Camp of the Woodmen of the World, which suit was duly prosecuted to the Supreme Court of Nebraska which, in its decision, upheld the right of defendant to increase its rates and to amend its Constitution, laws and by-laws "making other provisions hereinabove pleaded;" by reason of which plaintiff's alleged cause of action has been finally foreclosed and adjudged to be without merit. The opinion is not set out in the answer nor is even the volume and page of the report of the case stated, but it is alleged that the issues in said case "are identical with a *part* of the issues involved in this suit" (Italics ours), and that the decision is controlling upon this court and *res adjudicata* as to this plaintiff; and defendant pleaded and invoked section 1 of article IV of the U. S. Constitution, the "Full faith and credit" clause, as a bar to this action. (Aside from whether or not, in thus referring to the Fowler case, defendant merely pleaded a *conclusion,* it may be well to observe that neither insured in his lifetime, nor the plaintiff beneficiary thereafter, ever at any time questioned the right of the society to change the rates, but, on the contrary, plaintiff throughout this case has conceded such right and asserted it was the duty of defendant to levy assessments at such rates as would enable it to meet the obligations of its insurance contracts.)

To the above answer plaintiff filed a reply pleading performance of all conditions and the payment by insured of all dues, assessments

and premiums due defendant, further pleading that defendant was estopped to deny that said certificate was in full force and effect at the time of insured's death, and is estopped to assert or plead that the provisions of the contract to the effect that payments thereon were to cease after thirty years, were *ultra vires*.

A large number of cases are cited by defendant, which merely hold that the failure to pay monthly assessments within the time allowed will, in the absence of waiver or estoppel, work a forfeiture, and that such penalty is self-executing where the contract provides that suspension and forfeiture shall *ipso facto* result, and not merely that the member shall be *liable to* suspension. There is no doubt but that such is the law. However, this has little or nothing to do with the point here involved. Of course, failure or refusal to pay assessments which the insured is clearly obligated to pay by the terms of the contract, will result in the member's automatic suspension from the society when such penalty is provided; but in this case the assessments not paid were those made *after* the thirty-year period; and whether or not the alleged suspension and forfeiture arose depends on the validity and effect of the clause, "Payments to cease after thirty years." On this question decisions like those mentioned, as well as cases holding that forfeiture for failure to pay assessments will be enforced whether the condition be considered precedent or subsequent, are likewise not in point.

Defendant also makes the point that insured *acquiesced* in his suspension, and his beneficiary is bound by such acquiescence, even though the suspension was not legal, and it need not appear that the member had legal notice of such suspension so long as he acquiesced therein; and Bangs v. Supreme Council Legion of Honor is cited in support thereof. We have been wholly unable to find any such case in the volume of the S. W. Reports cited by defendant, but presume that the case referred to is that of the same title reported in 179 Mo. App. 21. It may be observed that the decision, as we read it, does not hold that, in a case like this, an insured can be held to have *acquiesced* in his suspension; but merely that when insured is shown to have acquiesced in his suspension, this will bind his beneficiary. The record, in the case at bar, shows a carbon copy of an original letter which the clerk of the Sovereign Camp says he forwarded to insured at Cameron, Missouri. Said letter is dated March 22, 1924, and among other things says: "At one time we issued a certificate in which it was understood that payments would cease in . . . 30 years but the Insurance Commissioner in a number of states declared it was not within the rights of a fraternal society to issue a certificate containing this clause and we were compelled to eliminate it on the penalty of being barred from doing business in those states. The law was repealed at the next meeting of the Sovereign Camp.

The matter stood in this condition until some of the certificates had been in force for twenty years when it was taken up and tried in court. We are inclosing a letter giving you the findings of the court. . . . We note you are now suspended for the nonpayment of the February, 1924, installment, but *if you are in good health* we trust you will immediately send the clerk a remittance sufficient to cover the February and March installments in order to again place your membership in good standing, *and if you will remain in good health for* 30 *days after making the payment,* your certificate will be restored to full protection." (Italics ours.) Thus it will be seen that, in view of the *condition of good health* and its *continuance* for a certain period *after* the payment of the installments menioned, defendant was not giving insured an *unconditional* opportunity to become reinstated, which should have been done in view of the manner in which the defendant itself, and not insured, had brought about the failure to pay the assessments mentioned. So far as the record discloses, there is no showing that insured could have complied with these conditions had he otherwise desired to do so. So that it is not true that insured *acquiesced* in his suspension but that he was *compelled* to submit for the time being, to what the defendant did. However this may be, and even though our remarks here may be mere *obiter,* yet acquiescence cannot be charged as a defense against plaintiff's case, for the further reason that acquiescence was not pleaded. It is an affirmative defense and is not available unless pleaded. [Murphy v. Brotherhood of Railroad Trainmen, 199 S. W. 730.]

But even had acquiescence been pleaded that would have been no defense, if the suspension were illegal, because in that event insured had fully performed the contract and had the right to treat the certificate as in force. [32 C. J. 1264, sec. 462.] It is here said that—"the beneficiary may await the event on which the policy becomes payable, and after the death of the insured may sue for the amount payable under the policy. In accordance with this rule, the person suing on the policy may set up the invalidity of the cancellation where the cancellation is pleaded by the company in defense. So also in 45 C. J. 72, sec. 61, it is said—"In accordance with the rule relating to insurance contracts generally, and life insurance policies in particular, where the society wrongfully cancels or repudiates a contract of mutual benefit insurance, the member may elect to treat the certificate as still in force and let the question of the validity of the cancellation or repudiation wait until the policy is payable and is sued on . . . without first exhausting his remedies within the organization unless the by-laws so require." The record does not show, nor was it pleaded or contended, that the by-laws of defendant required insured to first exhaust his remedies

within the organization. So that again the right of plaintiff to recover comes back to, and depends solely on, the question whether the certificate became null and void for failure of insured to pay the assessment of February, 1924, whereby, as defendant asserts, insured became automatically suspended March 1, 1924.

If we understand defendant's brief correctly, the basis of its contention in this regard stands on two legs: First, that the agreement in the certificate, "Payments to cease after 30 years," and the by-law supporting it, were *ultra vires* or beyond the power of the society to make; second, that if such agreement and by-law were not *ultra vires*, still, in view of insured's agreement in the certificate to abide by the constitution and by-laws and amendments thereto, the subsequent amendment and final repeal of such by-law took the above named feature out of the insurance contract, so that when insured failed to pay assessments after 30 years, he was automatically suspended and the certificate became null and void.

We will dispose of the second leg first. Defendant cites Richmond v. Supreme Lodge etc., 100 Mo. App. 8, 19. In this case, however, the insurance contract contained an *"express condition"* that "the terms of the contract might be changed *as to the amount to become due* by a by-law to be passed in the future." (Italics ours.) There is no such provision in the insurance contract now under consideration. A number of other cases are cited on the matter now considered, but they are clearly not in point. Defendant also cites Claudy v. Royal League, 259 Mo. 92, 105, 107, in support of its point that the subsequent amendment and repeal of the by-laws destroys the provision as to the cessation of payments after 30 years. But in a subsequent case, Dessauer v. Supreme Tent Macabees, 210 S. W. 896, 900, four judges (a majority) of our Supreme Court overruled the Claudy case while concurring in the conclusion reached by the other judges that a subsequently enacted by-law cannot destroy, impair or take away from insured a substantial right conferred expressly or impliedly by the contract itself "even though the application for the policy and the policy itself contain a provision to the effect that the member is to be bound by and must conform to all the laws then in force, as well as such as may thereafter be enacted by the association; the provisions regarding such subsequently enacted by-laws have been construed and must be construed, to mean such by-laws and rules as may be thereafter enacted for the government and regulation of the conduct and management of the affairs of the association, and prescribing the duties of the member, and not for the purpose of changing or nullifying contracts entered into with its members. The case of McCoy v. Modern Woodmen, 275 S. W. 552, 554, follows the Deseauer case; and it also holds that Section 6405, Revised Statutes 1919 (now Sec. 5997,

R. S. 1929) did not apply to the contract of insurance involved because it (the Section) was enacted after the certificate was issued. That is the situation here, because the certificate herein was issued in 1894 and the statute was not enacted until 1911. The case of Whitmore v. Lawrence, etc., Assn., 286 S. W. 842, 843, is also in line with the two former cases above cited. So that the second leg of defendant's defense cannot be held sufficient to defeat plaintiff's rights under the certificate.

With reference to the other leg of defendant's defense, it may be questionable whether the defense of *ultra vires* was, in fact, strictly or well pleaded. In fact, the answer says nothing about *ultra vires* or the power of the society to issue such a contract. The answer sets up merely that plaintiff is *bound*, and this case is *controlled*, by the decision in the case of Trapp v. Sovereign Camp, Woodmen of the World, 168 N. W. 191, but it simply announces that the "main questions presented" have been determined adversely to plaintiff in a certain other case, Haner v. Grand Lodge, A. O. U. W., 168 N. W. 189; but that decision is not set out in the answer, as perhaps it should have been, unless the reference to it in the decision made it such a part thereof as would obviate the necessity of setting it out. Furthermore, the question whether the act of the society was *ultra vires*, would seem to depend *fundamentally* upon the Nebraska *statute* creating the society and giving it the power it was authorized to exercise, and then upon the Nebraska decisions construing or enforcing that statute. Now, the statute is nowhere pleaded or set up in the answer. Section 806, Revised Statutes 1919, passed in 1927, says—"In every action or proceeding wherein the law of another State of the United States of America is pleaded, the courts of this State shall take judicial notice of the public statutes and judicial decisions of said State."

We take it that this means that it is only where the law of the other State is *well* or *correctly* pleaded that the courts of this State shall take judicial notice of the public statutes and judicial decisions of that State, bearing upon the question involved. Hence, unless the law of the State of Nebraska defining the power of defendant has been properly and well pleaded; we are not required by our statute, Section 806, to take judicial notice of the laws and decisions of Nebraska bearing on the question of *ultra vires*. [Bank v. Gordon, 6 S. W. (2d) 60; Ramey v. Missouri, etc., R. Co., 21 S. W. (2d) 873.] But the reply, in pleading that defendant is estopped to plead *ultra vires*, seems to concede that it has been well pleaded and, therefore, we should perhaps take the case as the pleadings make it in that record.

It will be observed that, in the case at bar, the plaintiff pleads that defendant is estopped to plead *ultra vires* or lack of power to issue the certificate sued on. This puts the case in a vastly different situation from that of any cited and relied upon by defendant. Take the Nebraska case pleaded and relied upon, namely, Trapp v. Sovereign Camp, to compel the defendant to issue him a paid up policy under a by-law providing therefor. The defendant pleaded *ultra vires,* but there was no pleading of estoppel to make that defense or, if so, no facts appear which would create estoppel. In the case of Haner v. Grand Lodge, A. O. U. W., 168 N. W. 189, referred to in the Trapp case, there was likewise no plea of estoppel to make the defense of *ultra vires,* nor facts to create such estoppel. In that case the certificate was issued June 1, 1888, and it was not until afterward, to-wit, in May, 1917, that a by-law was adopted, which authorized payment of certain sums to a member, who is in good standing, upon his becoming seventy years of age. The court held that the by-law was *ultra vires* because it authorized payments to a member when he reached seventy regardless of whether he was disabled or not, while the statute, although it did authorize, in addition to payment of benefits in case of death, the payment of benefits in case of sickness, temporary or permanent physical disability, either as a result of disease, accident or old age, did not give the right to confer such a benefit to a member merely because he has reached the age of seventy years; and the plaintiff had alleged that he was disabled "by reason of having reached the age of seventy years," but the court held that the attainment of the age did not necessarily work disability. It was *argued* that the society was estopped to deny the validity of the by-law, but, as the by-law was adopted after plaintiff had become a member there was nothing in the way of his detriment to create an estoppel, and he was a party to the adoption of the by-law. Besides, all he had done was to pay the assessments due from him to maintain the insurance he obtained and held before the by-law was adopted. He had not been induced to change his position a particle by what the society did either in enacting the by-law or in its dealings with insured.

In the case of Garretson v. Sovereign Camp, W. O. W., 243 S. W. 257, decided by the Springfield Court of Appeals, there appears to have been a plea of waiver or estoppel but the court held that there was nothing in the facts to constitute such.

The case of Stark v. Sovereign Camp, W. O. W., 225 S. W. 1063, decided by the Court of Appeals of Kentucky, and cited by defendant is likewise one in which estoppel was not pleaded and no elements of estoppel appeared from the facts. If there are holdings in that case to the effect that insured could not possibly be in a position

where he could invoke estoppel, they are not controlling upon us since our courts do not agree therewith, but announce a different rule. In Cass County v. Mercantile, etc., Ins. Co., 188 Mo. 1, 13, 17, it is held that the plea of *ultra vires* is not an absolute defense in all cases of excess of power without regard to other circumstances and conditions. When an act is *prohibited* by statute its performance is to be held void because such is the legislative will, but where the prohibition is, at most, only by *implication* and the act is not wrong *per se* and the contract is for a lawful purpose entered into in good faith and fairly executed by the party who seeks to enforce it, the defense of *ultra vires* may not be set up to exempt the party so pleading it. The case of Marshall v. Knights of the Maccabees, 270 S. W. 418, holds that the defense of *ultra vires* is not open to a fraternal beneficiary association where contract in excess of charter authority has been fully executed by the other contracting party, and is for a lawful purpose, and is not *expressly* prohibited by law. The defendant in that case set up as a defense the plea of *ultra vires* and plaintiff pleaded estoppel against such a defense. The case in its ultimate facts is very much like the case at bar; except that in the latter the facts entering into and creating the estoppel are much stronger. Insured herein was a young man not quite twenty-one years old, with a long life expectancy ahead of him. The insurance offered him by defendant, instead of requiring him to pay assessments down to the "last syllable" of his lifetime, gave him a contract whereby he would not have to make payments after thirty years. Undoubtedly this was a potent inducement to him to take such insurance. He did so, and paid all assessments called for including those at increased rates until the thirty years were up, and then he ceased paying, expecting to still have his insurance. Whereupon the defendant notifies him that he has been suspended for nonpayment of his February and March, 1924, dues and assessments, and he is told that such provision has been eliminated from the contract. He is not given the unconditional opportunity of paying such dues and assessments, which he was led not to pay by the thirty-year clause defendant had placed in the contract, but he is blandly told that he may pay them *if he is in good health* and *if he continues thereafter to be in good health for a period of thirty days,* he will be restored to membership. If these facts do not create an estoppel we are unable to conceive what would.

The point urged by defendant that if plaintiff is held liable to recover, certain sums should be deducted from the amount recoverable, because insured did not elect to come under the provisions of section 60 of the by-laws by paying the increased rate established in 1919 (in support of which the decision in Fowler v. Sovereign

Camp, W. O. W. was attempted to be pleaded) has no application to the certificate in suit. Section 60 deals only with "Combined Benefit Certificates." The by-laws clearly provide for two classes of certificates, one of which is called the "Combined Benefit Certificate" which, in addition to death benefits, allows for "old age disability" etc., while the certificate in suit does not. It is apparent from the statements made in defendant's pleading in reference to this phase of the case, and from the record generally, that section 60 and the plan of reapportionment adopted thereunder, apply not to the "Universal Certificate" which is the kind herein sued on, but to the aforesaid "Combined Benefit Certificates."

The judgment is accordingly affirmed. All concur.