R. S. MYERS AND CHASE SPICER GUTHRIE, EXECUTRIX OF THE LAST WILL & TESTAMENT OF M. L. GUTHRIE, DECEASED, RESPONDENTS, v. UNION ELECTRIC LIGHT & POWER COMPANY, A CORPORATION, APPELLANT.—125 S. W. (2d) 950.

Kansas City Court of Appeals.  March 6, 1939.

*Baker & Baker, D. M. Cuthbertson* and *Cave & Hulen* for respondents.

*David H. Robertson* for appellant.

KEMP, J.—This is an action to recover a balance of $8494.68, alleged to be due for clearing timber, etc., within the Bagnell Dam Reservoir area. Upon trial of the case there was a verdict in favor of plaintiffs (respondents here) in the amount of $4500, from which judgment defendant (appellant here) duly appealed. The amended petition upon which the trial was had was in two counts—one based upon a contract providing a compensation of $40 per acre for said clearing, and the second count based upon *quantum meruit*. The first count of the petition, based on the contract, was dismissed and the case was submitted to the jury solely upon the count in *quantum meruit*. This was doubtless due to the fact that upon a trial of a former suit involving the same parties and subject matter, wherein plaintiffs had recovered a verdict for $8400, plaintiffs sought recovery solely upon the contract; and upon appeal to the Supreme Court it was there held that no recovery could be had upon the con-

tract and the judgment was reversed and remanded, with the suggestion that plaintiffs might be entitled to recover upon another theory. Further facts necessary to an understanding of the questions herein passed upon will be set out in the course of the opinion.

At the outset we are called upon to consider respondents' motion to dismiss this appeal on the ground that appellant has failed to make a clear, concise statement of the case as required by our Rule 16 and by Section 1060, Revised Statutes Missouri 1929. Section 1060, Revised Statutes Missouri 1929, is as follows:

"On appeals and writs of error each party shall, on or before the day next preceding the day on which the cause is docketed for hearing, make out and furnish the court with a clear and concise statement of the case, and the points intended to be insisted on in argument."

Rule 16 of this court, so far as pertinent to the issue here raised, is as follows:

". . . The statement filed by the appellant shall consist of a clear and concise statement of the case without argument, reference to issues of law or repetition of testimony of witnesses. That statement shall be followed by the brief which shall contain a statement of the points on which the appellant relies for the reversal of the judgment. . . . The respondent in his statement may adopt that of appellant; or if not satisfied with such statement, he shall correct any errors therein. *The purpose of this rule is to enable the court to be informed of the material facts of the case by the statements, without being compelled to glean them from the abstract of the record.*"

As provided by our Rule 18, the penalty for failure to comply with that part of Rule 16 relating to the statement of the case, is dismissal of the appeal.

The first case cited by respondents in support of their contention is Sims v. Hydraulic Press Brick Co., 19 S. W. (2d) 294. An examination of the opinion in this case discloses that the facts which there induced dismissal of the appeal present a very different situation from that in the case at bar. In order to point out distinguishing features in the statement contained in the *Sims* case and in the statement in the case at bar, we shall quote at some length from the opinion in the Sims case (1. c. 295):

"In this case appellant not only quotes at length from the testimony instead of stating the ultimate facts, but quotes only the testimony most favorable to his contentions, the more persuasive parts appearing *arguendo* in large type, without even intimating; in many instances, that the record contains other testimony admitted by the trial judge the import of which is quite to the contrary. These excerpts are even interspersed with comments of counsel that are not only argumentative but absolutely misleading when considered, as they

must be, as a part of the statement of the facts of the case. For instance, counsel for appellant says: 'Plaintiff was an illiterate, uneducated colored man, unable to read and write, and the paper which purported to be a release was not read to him, and plaintiff did not sign a release and signed only a receipt for wages.' This purported statement of ultimate facts is then supported by excerpts from plaintiff's testimony with not even a suggestion that they were anywhere controverted. Recourse to the record shows that substantial and unequivocal evidence was introduced by defendant to the effect that this paper was read to plaintiff before he signed it, that it was a release, and that when plaintiff signed the paper he knew it was a release. Even after making due allowance for the natural if not inevitable touch of the advocate, this is manifestly not a *fair* statement of the facts of the case without argument, and similar instances of partial and misleading representation of the facts in evidence occur throughout this part of appellant's brief, in clear violation of our rule No. 15. Respondent has filed motion to dismiss the appeal because of appellant's failure to comply with this rule. The motion is sustained and the appeal dismissed. In so ruling we are not to be understood as holding that court rules are to be applied harshly or in a manner highly technical. On the contrary, they should be taken to mean just what they say and should be applied to effectuate their underlying purposes.''

Summarizing the vices charged against the statement in the *Sims* case, it appears that (1) it recited only the testimony most favorable to appellant's contention, without indicating that the record contained testimony in conflict therewith; and (2) it contained comments of counsel argumentative and "absolutely misleading." These vices cannot be charged against the statement in the case at bar. There is no attempt to insert only the facts most favorable to the appellant. In fact, the principal criticism of the statement must be that it went into too great detail in setting out the facts as disclosed from all the testimony—both that offered on behalf of the appellant and on behalf of the respondents. Unlike the situation in the *Sims* case, we discover in the statement here no attempt to mislead by the omission of reference to testimony conflicting with that of the appellant or the omission of testimony favorable to the respondents. The distinction in the respective situations presented by the statements in the two cases is so manifest that it must be apparent that the Sims case is not an authority for the dismissal of this appeal.

Respondents also urged, in support of their motion to dismiss, the case of State ex rel. State Highway Commission of Missouri v. Shain, et al. Judges, 62 S. W. (2d) 711, wherein the Supreme Court upheld the opinion of this court (written by Judge TRIMBLE) in the case of Euler v. State Highway Commission, 55 S. W. (2d) 719. In the Euler case, the court said, (l. c. 722):

". . . The statement does not present the case in any understandable form. . . . For instance, the case is one in fifteen counts, while the record is presented as if it were one of a single count; that is to say, the evidence, such of it as is included in the abstract, is put in without anything to show to which count any particular portion of such evidence relates. Hence, in endeavoring to ascertain what the record shows as to the evidence supporting any particular count, it is a hopeless task to endeavor to obtain a correct view thereon. The statement gives one no clue as to this."

A reading of the statement in the case at bar leaves no such uncertainty or bewilderment as to the issues or the facts, as is charged against the statement in the Euler case. We may further confidently add that it is a reasonably fair picture in view of the fact that respondents' statement filed herein does not present a picture substantially different from that presented by the more detailed statement submitted by appellant.

Respondents also cite the case of Hale v. Hale, 22 S. W. (2d) 56. This case is clearly not in point. The statement there challenged by a motion to dismiss the appeal was almost totally devoid of any statement of the facts in the case. Practically the only reference to the facts appearing from the evidence in the case was that (quoting from the statement there under review, 1. c. 57):

" 'Plaintiff's evidence if competent tended to sustain the allegations of his petition, and the defendant's evidence tended to refute said allegations.' "

This of course was no statement of the facts. In sustaining respondent's motion to dismiss the appeal, the court there said:

"Obviously, the aforesaid statement does not enable the court 'to be informed of the material facts of the case without being compelled to glean them from the abstract of the record,' as is required by rule 16 of this court. . . . The purpose of the statute and rule is to require appellant to give the court a clear understanding of the case, especially of the facts involved, without the necessity of searching the entire record in order to ascertain them. . . . In view of the press of business upon this court, we ought not to be compelled to expend time and labor in ascertaining what should be clearly and concisely presented in the statement."

The purpose of the rule as set out in the language last quoted, was substantially effectuated by the statement in the case at bar. While this statement is unusually long and does contain some matter which might have been properly omitted, and while doubtless a statement of the case conforming to Rule 16 of this court could be set out in considerably shorter space, nevertheless the statement here set out does give a reasonably clear picture of the issues presented, by the pleadings and of the facts disclosed from the evidence. The fact that the abstract of the record contains 458 pages and that ap-

pellant urges some thirteen assignments of error, one of which is, in effect, a demurrer to the evidence requiring a search of the entire record, will explain, in part at least, the length of appellant's statement. In view of the fact that respondents have urged, in support of their motion to dismiss, the opinion of this court in the case of Euler v. State Highway Commission, *supra*, which we have hereinabove discussed and found not controlling here, we call attention to a subsequent opinion of this court, likewise written by Judge TRIMBLE, in the case of Nowlin v. K. C. Public Service Co., 58 S. W. (2d) 324. In the Nowlin case, this court passed upon a motion to dismiss, wherein apparently the statement was attacked on the same grounds urged against the statement in the case at bar. In denying the motion, this court there said:

"The statement is longer than necessary, and contains matter that, under the rules, it need not contain; but it does give a fairly clear and understandable view of the case which, in its facts and because of some of the points raised, is somewhat different, in the nature of the statement required, from the ordinary case. Under such circumstances, it will not justify the imposition of such a penalty as the dismissal of the appeal. [Neff v. Sovereign Camp, W. O. W., 226 Mo. App. 899, 48 S. W. (2d) 564; Hartweg v. Kansas City Railways Co. (Mo. App.), 231 S. W. 269.] We should not dismiss an appeal on mere technical grounds, but only when a violation of the rule has resulted in a real evil which the rule was made to avoid; where, as here, the respondent has filed her own statement which, even if the appellant's statement were deficient, gives the court a clear bird's-eye view of the case, the purpose of a statement is subserved, and the motion to dismiss will be denied."

We think this language is strikingly applicable to the situation presented here, and that respondents' motion here might well be disposed of in the exact words of this court, as quoted above. In expressing this view we are acting in harmony with our ruling in the case of Euler v. State Highway Commission, *supra*, wherein we declared that it was our duty to enforce the rules made to further the efficient dispatch of business. This does not mean, however, that such rules of court shall be applied harshly or in any highly technical manner. On the contrary, they must be applied fairly and reasonably. The test must always be whether or not the purpose of a given rule is substantially effectuated. We have considered all of the cases cited by respondents in their suggestions in support of their motion and fail to find any instance in which a motion to dismiss the appeal was sustained on as slight a variation from the requirements of the rule as is presented by the statement here under review.

Respondents' motion to dismiss is bottomed solely upon the charge that "appellant, in its brief served and filed herein, has failed to

comply with the provisions of Section 1060, Revised Statutes Missouri, 1929, and Rule 16 of this court, in that, (a) appellant has failed to make a clear and concise statement of the case without argument, reference to issues of law or repetition of testimony, (and) (2) Rule 18 of this court requires a dismissal of the appeal for failure to comply with Rule 16 of this court and Section 1060, Revised Statutes Missouri 1929.''

Although the motion itself does not urge dismissal on any other ground, respondents,' in their suggestions in support of the motion, state that ''appellant has not incorporated in the brief any assignment of error, but would have the court use its points and authorities instead.'' This constitutes no ground for dismissal, if indeed respondents intended to so urge. It has been uniformly held by the appellate courts of this State that a separate, formal, collective assignment of errors is not essential. [Byam v. K. C. Public Service Co., 41 S. W. (2d) 945, l. c. 949.] And in the case of Dry Goods Co. v. American Express Co., 216 Mo. App. 561, l. c. 565, this court held that:

''An examination of defendant's brief discloses there are, in fact, no separate assignments of error, but under 'Points and Authorities,' said assignments are separately stated and numbered, thus making clear the contentions of appellant. This has been held to be a sufficient compliance with the rule and follows the ruling of the Supreme Court in Kirkland v. Boxby et al., 282 Mo. 462, 466, and cases there cited.''

Appellant's brief under ''Points and Authorities'' conforms to these requirements.

It is further urged in respondents' suggestions ''that many of the points (3, 4, IV-3, IV-4, 5 and 6), general in their terms, bear upon testimony that was offered, but neither under the points nor the argument is there any reference to where the testimony may be found,'' which it is contended is in violation of Rule 17, which rule is as follows:

''Appellant's Brief to Allege Errors Complained of.—The brief on behalf of appellant or plaintiff in error shall distinctly and separately allege the errors committed by the inferior court, and no reference will be permitted in the oral argument to errors not thus specified, nor any reference by either counsel to any authority not cited in his brief, unless for good cause shown the court shall otherwise direct.''

It is impossible for us to know to what the first figures ''3, 4,'' mentioned above, refer in the brief as there are several such numbers under Points and Authorities identifying sub-heads. The other points ''IV-3 and IV-4, 5 and 6,'' we think were in full conformity with the requirements of Rule 17. For example, sub-head 3, under point IV, is as follows:

"(3) When the method of measurement, the stadia method, and the graphic mapping of the field notes of stadia measurements were proven, the burden of bringing forward evidence shifted back to respondents and since they introduced no evidence of mistake in the methods, they failed in their burden of proof. (Citing authorities.)"

Certainly this fully states appellant's contention or "point" as a sub-head under the error alleged to have been committed by the court as set out in point IV. We have examined the other sub-heads complained of and likewise find that they satisfactorily set out contentions of appellant under point IV and are not violations of Rule 17 of this court.

Believing as we do that the appellant's statement in the case before us is, as to substance at least, in reasonable conformity with the fundamental purpose of Section 1060, Revised Statutes Missouri 1929, and of Rule 16 of this court, respondents' motion to dismiss the appeal is denied.

Preceding the trial of the case, appellant, as defendant below, filed a plea in bar, wherein it was asserted that this suit was barred by Section 862, Revised Statutes Missouri 1929, requiring suits of the character therein described to be commenced within five years after such causes of action shall have accrued. There is no contention that this suit does not come within the character of actions described in said five year limitation statute. It is respondents' contention that, notwithstanding the fact that this suit was filed more than five years after the cause of action arose, Section 862 of the statute constituted no bar to the prosecution of the suit inasmuch as the suit was filed within a year after respondents *suffered a dismissal of the original suit,* in compliance with the saving provisions of Sections 874 and 877, Revised Statutes Missouri 1929.

For a clear understanding of the contentions of the respective parties with reference to this issue, a chronological statement of the facts pertinent thereto is necessary.

On November 23, 1929, respondents Myers and M. L. Guthrie (now deceased, and respondent, Chase Spicer Guthrie, is his executrix) entered into a contract with appellant to clear certain tracts of land in Miller County included in the reservoir area of Bagnell Dam. The compensation was to be based upon $40 per acre for the lands so cleared and payments for the work done were to be made semi-monthly upon engineers' estimates. The work was to be done "in such a way as to meet satisfactorily the requirements of the Federal license granted to and owned by the Union Electric Light & Power Company" for the construction of the Bagnell Dam "as determined by the engineers and representatives of the United States in charge of such matters." The said Myers and Guthrie were paid upon estimates made from time to time, sums aggregating $5776.80, which appellant claims represented the amount due respondents for

the acreage actually cleared pursuant to the terms of the contract. Respondents claimed that they cleared every acre within the tracts of land described in the contract, which tracts admittedly comprised 392.95 acres. The work was completed, or at least Myers and Guthrie left the job, on or about May 30, 1930. Approximately two months thereafter, respondents, Myers and Guthrie, were advised that the United States engineers had determined that their work did not meet the requirements of the Federal license but they declined to do anything further unless paid an additional amount and the work required to be done was performed by the appellant.

On December 11, 1930, a suit on the contract was filed in Miller County to recover the balance alleged to be due under the terms thereof. Upon trial of the issues, judgment for $8450 was entered on May 25, 1931. Upon appeal by the defendant, the Supreme Court, on December 6, 1933, reversed and remanded the case. [See Myers v. Union Electric Light & Power Co., 334 Mo. 622.] It might be noted that the Supreme Court there held that under plaintiffs' own testimony, no recovery could be had upon the contract, stating further:

"It may be, however, that if the case is retried, upon correct prin-. ciples of law, plaintiffs might be able to show that they have not been fully paid for all the work they did."

Thereafter, on January 22, 1935, an order was entered in the circuit court of Miller County, dismissing the suit "for failure of plaintiffs to prosecute the same."

On February 12, 1935, and more than four days after the judgment of dismissal, but within the January Term of said court, plaintiffs filed a motion to reinstate said cause on the docket.

After the January Term had passed, and to-wit, on May 8, 1935, at the May, 1935, Term, said court made an order sustaining plaintiffs' motion and reinstating the case upon the docket.

Shortly before September 18, 1935, the date on which the case was set for trial, defendant (appellant herein) filed in the Supreme Court of Missouri its application for a writ of prohibition, whereupon the Supreme Court issued its preliminary writ, thereby staying the trial of that particular lawsuit.

On November 12, 1936, the Supreme Court handed down its decision making the preliminary rule of prohibition permanent, on the ground that the trial court acted without jurisdiction in making its order reinstating said suit at the May Term, and that the order of dismissal at the January, 1935, Term was final. [See State ex rel. Union Electric Light & Power Co. v. Sevier, Judge, 339 Mo. 732.]

Thereafter, on March 18, 1937, respondents filed a new suit which is the instant case, and subsequently filed their amended petition, upon which the instant case was tried. Thereupon, appellant filed its plea in bar, alleging the Statute of Limitations (Section 862, Re-

vised Statutes Missouri, 1929) had run against the maintenance of this suit. The trial court overruled the plea in bar, to which ruling appellant duly saved its exception.

The cause of action herein sued on accrued not later than December 11, 1930, the date on which the first suit was filed. It is true that the count on *quantum meruit*, wherein there were allegations of fraud and mistake, was not pleaded until the instant suit which filed May 18, 1937, but there is no contention that the fraud and mistake were not discovered until within five years of this filing date. Indeed, there could be no such contention because, under respondent Myers' own testimony, it appears that he knew all of the facts with reference to fraud and mistake in measuring the acreage cleared, as the estimates were submitted to him from time to time during the progress of the work. In other words, with respect to this allegation, no new facts were discovered subsequent to the filing of the first suit on December 11, 1930. But respondents contend that the fact that more than five years elapsed between the date on which the cause of action arose in 1930, and the date on which the petition in the present suit was filed—March 18, 1937—is not controlling under the circumstances here. It is respondents' contention that they did not *suffer* a non-suit within the meaning of Section 874, Revised Statutes Missouri 1929, on January 22, 1935, when the order of dismissal was entered, but on November 12, 1936, when the Supreme Court ruled on appellant's suit in prohibition, after which time, respondents contend, they had, under the terms of Section 874, one year within which to bring a new suit. The new suit was brought on *March 18, 1937*, and within approximately four months after the Supreme Court's decision in the prohibition suit.

Section 874, Revised Statutes Missouri 1929, is as follows:

"If any action shall have been commenced within the times respectively prescribd in articles 8 and 9 of this chapter, and the plaintiff therein suffer a non-suit, or, after a verdict for him, the judgment be arrested, or, after a judgment for him, the same be reversed on appeal or error, such plaintiff may commence a new action from time to time, within one year after such non-suit suffered or such judgment arrested or reversed; and if the cause of action survive or descend to his heirs, or survive to his executors or administrators, they may, in like manner, commence a new action within the time herein allowed to such plaintiff, or, if no executor or administrator be qualified, then within one year after letters testamentary or of administration shall have been granted to him."

The question then is: Did the filing of the new suit on March 18, 1937, come within the one-year saving provisions of Section 874? In support of respondents' contention that it did, they cite the cases of Adams v. Railways, 326 Mo. 1006, 33 S. W. (2d) 944, and Patton v. Wabash Ry. Co., 221 Mo. 609, 283 S. W. 723. In Adams v. Rail-

way Co., *supra*, the court had before it the following facts: On May 4, 1923, the plaintiff brought separate suits for the negligent deaths of his infant son and his wife, respectively, which suits were later consolidated and which were based upon and involved the same cause of action set out in a new suit in two counts, subsequently, filed on January 17, 1925. For a statement of the further facts, we quote from the opinion in the case (l. c. 1009, Missouri Reports):

"It is admitted by plaintiff that he took an involuntary nonsuit in the former consolidated suits on December 5, 1924, and after moving unsuccessfully for a new trial, appealed that case to this court and did not dismiss his appeal therein until February 25, 1927, which was over two years after the present suit was filed. He contends that he suffered a nonsuit in the first suit when the order of involuntary nonsuit was entered, because he did not give an appeal bond and thereafter no legal impediment existed to the enforcement of such judgment of nonsuit. On the other hand, defendant contends that the nonsuit was not suffered, within the meaning of Section 4221, until plaintiff dismissed his appeal in the first case and that the filing of the present suit, more than the one year after the cause of action accrued and before plaintiff thus suffered nonsuit in the first case, does not save plaintiff's causes of action from the bar of the statute provided in said section. Plaintiff concurs in defendant's view, provided we conclude that he did not suffer a nonsuit until his appeal was dismissed."

Upon this state of facts, the court there held in effect that, regardless of the fact that no bond was given, the appeal suspended the date on which plaintiff *suffered* a non-suit, from the date on which the judgment of nonsuit was entered to the date on which the appeal was finally disposed of. In so ruling, the court said (l. c. 1011, Missouri Reports):

"*The test of whether or not a nonsuit has been 'suffered' is whether or not the order or judgment of nonsuit has finally terminated the suit.* When a judgment of nonsuit has been appealed from, the nonsuit does not become final, in the sense that it ends the lawsuit, until the appeal, taken with or without appeal bond, has been disposed of consistently with such judgment."

The court there held that under these facts, the action was barred by the Statute of Limitations.

In the case of Patton v. Wabash, *supra*, the court was required to pass upon a factual situation closely analogous to the *Adams v. Railway* case, *supra*. In the *Patton* case, an original suit was filed within the one-year period of limitation applicable to a cause of action by the mother of deceased under the death statute. More than one year after the cause of action arose, but while said original suit (which was later dismissed) was pending, a new suit was filed. This court held that the one-year saving statute did not apply inasmuch as the

new suit was filed more than one year after the cause of action arose and was not filed within one year after the dismissal of the original suit.

In addition to the cases cited under this point by respondents, we call attention to the case of Chouteau v. Rowse, 90 Mo. 191. In that case the plaintiff took an involuntary non-suit with leave to move to set same aside. Upon said motion being overruled the case was appealed and the judgment in non-suit was affirmed. More than a year after the judgment of non-suit was rendered by the circuit court, but within a year after judgment on plaintiff's appeal was affirmed, plaintiff filed a new suit. Upon a trial of the new suit defendant contended that the action was barred because the new suit was not filed within one year after the judgment of nonsuit was taken in the circuit court, and that the five-year Statute of Limitations had run prior to the institution of the new suit. It was plaintiff's contention that the one-year saving period ran from the date on which the judgment of non-suit was affirmed by the appellate court. The court there held (l. c. 196), that, ". . . in the case of an involuntary non-suit, which the plaintiff, by some adverse ruling of the court, is driven or compelled to take, with leave to move to set the same aside, with a view *not to abandon* the prosecution of the suit, but to further *prosecute* it by appeal to test the correctness of such ruling," the suit is not ended until the ruling by the appellate court, and that the one-year saving statute does not begin to run until the disposition of the case upon appeal.

None of these cases supported respondents' contention here. The facts are not analogous to the facts in the case at bar. In the instant case, the suit in prohibition filed directly in the Supreme Court was not in the nature of appeal either from the judgment of the circuit court dismissing the suit, nor from the judgment of the circuit court in reinstating the cause of action. On the contrary, it was a direct attack on the validity of an act of the circuit court in reinstating a case which had, at a previous term of court, been dismissed, which act the appellant here was there contending to be a nullity— an attempt by the circuit court to act in a matter wherein it had no jurisdiction. In other words, appellant here (relator in the prohibition action) was contending in a prohibition suit filed directly in the Supreme Court that upon the passage of the term in which respondents' suit was dismissed, the order of dismissal thereupon became final, and that the action of the circuit court in reinstating the suit at a subsequent term thereof was an absolute nullity. It was an independent suit challenging the validity of an act of the circuit court. It was not a case wherein an appeal was taken from an adverse judgment within the term at which a timely motion for a new trial had been overruled.

As we read the opinion in the prohibition suit, State ex rel. Union

Electric Light & Power Co. v. Sevier, 339 Mo. 732, the Supreme Court there ruled the question against respondents as to when the non-suit was suffered. A reference to the opinion makes this clear. The court, after setting out the facts with reference to the judgment of non-suit, the untimely motion to set same aside and the action of the court in setting said judgment aside after the termination of the court term, said at page 735:

"The Court, *en banc,* in State ex rel. Conant v. Trimble, 311 Mo. 128, 277 S. W. 916, carefully considered this question, overruled all former cases holding that in such a situation a court had any such authority at a subsequent term, and stated its conclusions, as follows:

" 'Untimely motions (being only suggestion to the trial court) cannot and do not carry the case over to the next term. Upon the failure of a party to file timely motions, the only thing left is the right of the court, at the judgment term, to set aside the judgment. If the court fails to set it aside at the judgment term, the judgment becomes a finality, and an appeal can be taken at that term and not later; this because such belated motions have no legal *status,* and have no legal effect, upon the judgment. At the very most they are but mere suggestions to that court that the judgment should be set aside, within the judgment term, when the court has the judgment within its breast. A failure to act upon such suggestions does not keep the judgment from becoming a finality at the end of the term, and *it continues to be such for all time.* These belated motions are but mere scraps of paper, without legal *status* or legal effect. The rights of the court of its own motion, or upon the mere suggestion of a party, to set aside a judgment, expires with the close of the judgment term. . . . A belated motion is no motion at all. It has no legal *status,* and can only serve as a suggestion to the court to set aside the judgment at the judgment term, and not at a term at which the judgment has passed from the breast of the court, and has become a finality. The discretion of the trial court must be exercised at the judgment term.' (Italics ours.)

"This court has restated, approved and followed this rule in the following subsequent cases, to-wit: (Citing cases.) It would seem that these decisions certainly settle the matter. Even this court has no authority at a subsequent term to make orders, requiring judicial action, in a case decided at a prior term, unless there has been a timely motion filed which will carry the case over to that term.''

Respondents further urge that, following the judgment of dismissal in the circuit court, they could not have successfully instituted a new suit until the question raised in the prohibition suit had been determined, and hence this suit is saved from the bar of limitations by the provisions of Section 877, Revised Statutes Missouri 1929. In

this contention respondents are in error. Said Section 877 is as follows:

"Whenever the commencement of any suit shall be stayed by an injunction of any court or officers authorized to grant the same, the time during which such injunction shall be in force shall not be deemed any portion of the time in articles 8 and 9 of this chapter limited for the commencement of such suit."

This section applies to those cases wherein "the commencement of any suit shall be stayed by an injunction of any court." The commencement of the instant suit, against which the bar of the Statute of Limitations is urged, was not enjoined by any court at any time. The case of Cordia v. Matthes, 90 S. W. (2d) 101, cited by respondents is not analogous to the situation in the case at bar. In that case, the facts come squarely within the provisions of Section 877. There an *injunction* was issued within the period of limitation, staying the foreclosure of a deed of trust for a period of more than five years. The court there held that the Statute of Limitations was tolled for the period that the injunction was in force. There was never an injunction, or any proceeding in the nature of an injunction, *against the commencement of the instant suit*. The prohibition action referred to was directed *to the Judge of the circuit court* against further proceedings in the original suit which the relator in the prohibition action was contending had been dismissed and over which the circuit court had no further jurisdiction. The preliminary rule in prohibition merely stayed the right of the circuit court to proceed with the trial of the dismissed suit which he had undertaken to reinstate. It did not interfere in the least with the right of the respondents to institute a new suit any time within the one-year period following the judgment of dismissal in the original suit. This was specifically held by the Supreme Court in the prohibition suit. At page 737 of the opinion, the Supreme Court set out this same contention there made by respondent and its rulings thereon, as follows:

"That prohibition is a matter of discretion and not of right and that justice requires that plaintiffs be allowed to proceed in the case that was dismissed, because it was commenced within the period of the Statute of Limitations, while a new suit could not have been commenced within that time and would have been barred thereby. This overlooks the fact that a judgment of dismissal for failure to prosecute is held to be a nonsuit (Meddis v. Wilson, 175 Mo. 126, 74 S. W. 984; Wetmore v. Crouch, 188 Mo. 647, 87 S. W. 954); so that under Section 874, Revised Statutes 1929, plaintiffs were authorized to commence a new action within one year.

"Our conclusion must be that when the January Term, 1935, ended without action, no motion having been filed in time to carry the case over to another term, the judgment of dismissal became

final (See, also, Stith v. Newberry Company, 336 Mo. 467, 79 S. W. (2d) 447, l. c. 461), and no authority existed for the court to make any order affecting this judgment at the May Term, 1935, or thereafter to proceed further therein."

We are, therefore, impelled to the conclusion that this action is barred by the Statute of Limitations.

Appellant, in urging the bar of the Statute of Limitations, further contends that the instant suit is one on *quantum meruit* and is a different cause of action from the original suit which was upon contract. In view of what we have heretofore said, it is unnecessary to pass upon this question and, likewise, unnecessary to pass upon appellant's other assignments of error.

The judgment is reversed. All concur.